UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH T., <br><br> Plaintiff, <br><br> v. <br><br> Martin O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Case No.: 23-cv-0125-AGS-VET <br><br> **ORDER ACCEPTING REPORT & RECOMMENDATION IN PART, REJECTING IT IN PART, AND AFFIRMING ALJ's DECISION (ECF 21)** |

This case tests the outer limits of Appointments Clause error. For Social Security appeals, the established boundaries are well defined: First, the decision of an unconstitutionally appointed administrative law judge (ALJ) is invalid and must be reversed. *Lucia v. SEC*, 585 U.S. 237, 241, 251 (2018). Second, that ALJ is disqualified from rehearing the overturned case—even if the appointment defect has been cured—on pain of another reversal. *Cody v. Kijakazi*, 48 F.4th 956, 961–62 (2022). Neither of those sins occurred here.

Rather, in this Social Security disability proceeding, an ALJ "partially" relied on medical opinions that implicate Appointments Clause concerns. That is, two doctors adopted findings from an unconstitutionally appointed ALJ who ruled on an earlier and different disability claim. Unlike the core Appointments Clause errors described above, this attenuated mistake is susceptible to harmlessness review. Due to the other substantial evidence supporting the ALJ's benefits denial, the error here was indeed harmless.

## BACKGROUND

In 2018, the Supreme Court's *Lucia v. SEC* decision raised the specter that hundreds of ALJs across the nation were not appointed by constitutionally authorized officials, as required by the Appointments Clause. "To address any Appointments Clause questions involving Social Security claims," that agency's proper appointing official promptly "ratified" and "approved" existing ALJ selections. 84 Fed. Reg. 9582-02, 9583 (2019).

Straddling the pre- and post-*Lucia* worlds, plaintiff Elizabeth T.'s decade-long quest for disability benefits faltered before three different ALJs. (*See* AR 15.) In 2015 and 2018, two improperly appointed ALJs denied her first disability application.[1] (AR 70–71, 89; ECF 21, at 5.) A few years later, Elizabeth applied once more, adding a sciatica claim and alleging a 2021 disability date. (AR 15, 18, 115.) A new and constitutionally appointed judge—ALJ Messer—considered that request. (*See* AR 26.)

At each disability hearing, the ALJs took account of Elizabeth's medical impairments and evaluated her remaining ability to work, known as the "residual functional capacity" or "RFC." *See* 20 C.F.R. § 416.945(a)(1). For RFC purposes, jobs are classified along a physical-exertion spectrum:

1. Very heavy work
2. Heavy work
3. Medium work
4. Light work
5. Sedentary work

*See id*. §§ 404.1567, 416.967. Given Elizabeth's age and background, a "light work" RFC would foreclose disability, absent sufficient "nonexertional limitations." *See* 20 C.F.R. pt. 404, subpt. P, App. 2, §§ 200.00(e)(2) & 202.10; (AR 25).

All three ALJs concluded that Elizabeth could perform "light" work with some qualifications that did not render her disabled. (AR 19, 26, 64, 69–70, 84, 89.) The earlier ALJs viewed Elizabeth as more limited—meaning their assessments were more favorable to her disability claim. (*See id*.) ALJ Messer, on the other hand, did "not adopt the finding[s]" in the 2015 and 2018 decisions "concerning the claimant's residual functional capacity." (*See* AR 15.) He fashioned his own appraisal, which contained some of the restrictions earlier ALJs imposed but no new ones. (*Compare* AR 19 *with* AR 64, 84.)

---

[1] The 2018 ALJ may have been constitutionally appointed when he ruled. (*See* ECF 27, at 4 n.2.) The Court presumes otherwise, as it makes no difference to the result.

In his ruling, ALJ Messer considered a variety of evidence, including several years' worth of new treatment records, Elizabeth's husband's testimony, and opinions from six medical experts. (*See* AR 19–24.) The two experts most relevant here—both state-agency consulting doctors—reviewed Elizabeth's file in detail and concluded there was "no material change" since the unfavorable 2018 decision (by an unconstitutionally appointed ALJ). (AR 102, 121.) Then, crucially, they "adopted" that decision "per policy guidance." (*Id*.); *see also* Social Security Acquiescence Ruling 97-4(9), 1997 WL 742758, at *3 (Dec. 3, 1997) (requiring adjudicators to "adopt" a prior ALJ finding "unless there is new and material evidence" or "a change in the law, regulations or rulings"). ALJ Messer regarded those two doctors' opinions to be only "partially persuasive." (AR 23–24.) He ultimately ruled against Elizabeth, finding she was not disabled. (AR 26.)

## DISCUSSION

On appeal, Elizabeth argues ALJ Messer went awry by: (1) relying on these consulting doctors, thereby introducing Appointments Clause error into the process, and (2) disbelieving her husband's testimony. (ECF 21, at 3–7, 9–14.) After initial review, the magistrate judge agreed that an appointments error tainted the ALJ's opinion and recommended reversal. (ECF 25, at 7.) The Social Security Commissioner objects.

When reviewing "portions" of a magistrate judge's report "to which objection is made," the district judge "freely considers the matter anew." *Dawson v. Marshall*, 561 F.3d 930, 932–33 (9th Cir. 2009). The Court may "accept, reject, or modify" the recommendation, "in whole or in part." 28 U.S.C. § 636(b)(1).

For Social Security appeals, courts may set aside the denial of benefits only when "the ALJ's findings are based on legal error or are not supported by substantial evidence in the record." *Attmore v. Colvin*, 827 F.3d 872, 875 (9th Cir. 2016). "Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023).

## A. Appointments Clause

Because Elizabeth seeks to considerably expand the reach of Appointments Clause error, it is helpful to begin with first principles.

### 1. *Governing Law: "Improper Adjudicator" Error*

Under the Appointments Clause, only "the President, a court of law, or a head of department" may appoint inferior "Officers of the United States." *See Lucia*, 585 U.S. at 244 (citing U.S. Const. art. II, § 2, cl. 2). If "none of those actors" name such an officer to that position, the appointment is unconstitutional. *Id*. at 245. *Lucia* held that Securities and Exchange Commission ALJs "qualify as such 'Officers.'" *Id*. at 241. Thus, an ALJ's appointment by "SEC staff members" was constitutionally defective, rendering the administrative proceeding over which he presided "invalid." *Id*. at 243, 251.

The evil at the heart of *Lucia* was that the adjudicator was unconstitutionally selected, offending "the structural purposes of the Appointments Clause." *See Lucia*, 585 U.S. at 251 n.5. The *Lucia* court ruled that the "remedy" was "a new hearing" before a "properly appointed official"—but not the original ALJ, "even if he has by now received . . . a constitutional appointment." *Id*. at 251. Put differently, that ALJ is disqualified from hearing the same matter again. In *Cody v. Kijakazi*, 48 F.4th 956 (9th Cir. 2022), the Social Security Administration defied that rule and sent a case back to the disqualified ALJ who decided the first proceeding, now that the ALJ was properly appointed. *Id*. at 958. The Ninth Circuit reversed, confirming that a disability claimant who has endured one hearing with an unconstitutionally seated adjudicator is entitled to a "fresh look" by "a new, independent ALJ." *Id*. at 962.

*Lucia* echoes the Supreme Court's longstanding lesson that a proceeding headed by an improperly appointed constitutional officer is structurally defective. *See, e.g.*, *Ryder v. United States*, 515 U.S. 177, 179 (1995) (reversing court-martial conviction because "two civilian judges" on the "Coast Guard Court of Military Review" were not "appointed in accordance with . . . the Appointments Clause"); *cf. Buckley v. Valeo*, 424 U.S. 1, 127 (1976) (striking down, as an appointments violation, a law that gave Congress the power

to choose "four of the six voting members" of the Federal Election Commission); *United States v. Germaine*, 99 U.S. 508, 508, 512 (1878) (concluding that a "surgeon" "appointed by the Commissioner of Pensions" was not "an officer of the United States" subject to the Appointments Clause).

### 2. *Expansion to Errors by Proper Adjudicators?*

The present dispute does not come within the direct ambit of *Lucia*, *Cody*, or the High Court's prior Appointments Clause jurisprudence. Everyone agrees that ALJ Messer was constitutionally appointed from the outset and never previously handled Elizabeth's disability claims. Elizabeth instead seeks to extend *Lucia* and *Cody* to reach errors by a properly placed adjudicator—specifically, to cover an ALJ's erroneous reliance on evidence that presents Appointments Clause-related concerns.

Some district courts have taken a step in that direction. They hold that the agency cannot substitute out a disqualified judge in name only, as when a replacement ALJ rubber-stamps or bows to a prior defective decision. *See, e.g.*, *Mygual J. v. Kijakazi*, No. CV 22-7835-KK, 2023 U.S. Dist. LEXIS 208077, at *12 (C.D. Cal. Nov. 17, 2023) (reversing because the new ALJ "fail[ed] to conduct his own assessment of Plaintiff's records," relying instead on "the prior ALJ's finding"); *Jennifer H. v. Commissioner of Social Security*, No. 2:22-CV-1845-DWC, 2023 WL 6571418, at *2 (W.D. Wash. Oct. 10, 2023) ("If a new ALJ could rely entirely on—or even give deference to—the prior ALJ's analysis, afflicted claimants would not get the [remedy] *Cody* purported to give them."); *Noriega v. Commissioner of Social Security Admin.*, 657 F. Supp. 3d 1219, 1222, 1226 (D. Ariz. 2023) (reversing because the new ALJ "relied upon the improper and unconstitutional 2017 decision," which that ALJ erroneously thought "created a presumption of continuing nondisability"). *But cf. Kimberly D. v. Commissioner of Social Security*, No. C22-5588-BAT, 2023 WL 3001405, at *3 (W.D. Wash. Apr. 19, 2023) (affirming decision of "a different ALJ" despite the two ALJs' decisions sharing "similarities and, in places, identical language and analyses").

5

This Court need not resolve whether a new ALJ's reliance on a disqualified judge's ruling violates the Appointments Clause. That scenario is not at issue: The ALJ here explicitly rejected the decisions of the improperly appointed judges. In his only reference to their 2015 and 2018 orders, ALJ Messer did "not adopt" their all-important RFC findings. (*See* AR 15.) Elizabeth instead implores this Court to leap well beyond the above authorities. She does not seek reversal because the ALJ adopted a defective decision on *this* disability application (with the new sciatica claim), nor because he adopted a void decision on a *different* application. No, she urges a new hearing because *two doctors* adopted an invalid decision about a *different* disability request—and their opinions *partially* persuaded the ALJ. (*Compare* AR 1 *with* AR 63, 83.)

What justifies this daisy-chain theory of Appointments Clause injustice? The best argument is that *Lucia* and *Cody* both forbid an "adjudication *tainted* with an appointments violation." *Cody*, 48 F.4th at 962 (quoting *Lucia*, 585 U.S. at 239). Perhaps, taken out of context, the word "tainted" misleadingly conjures images of uncontrolled contamination. Elizabeth seems to think of Appointment Clause taint like the plague, spreading from infected ALJs to their opinions and then to those who linger over their contagious words. But in *Lucia* and *Cody* it was more like a noncommunicable disease that afflicted only the compromised ALJs. In *Cody*, for instance, an earlier ALJ decision only "tainted" a later one because the same disqualified judge "issued both . . . decisions." 48 F.4th at 963. What's more, *Lucia* and *Cody* didn't recommend plague-style precautions of burning invalid decisions; their fix was confined to replacing the constitutionally infirm ALJ. *Cody*, 48 F.4th at 961 ("[T]o cure the constitutional error, . . . a different ALJ must hold a new hearing." (quoting *Lucia*, 585 U.S. at 251–52)); *see Jones Brothers, Inc. v. Secretary of Labor*, 68 F.4th 289, 303 (6th Cir. 2023) (confirming that adjudications need not "start from zero after a judicial decision invalidating ALJ appointments" and new ALJs need not "ignore all past proceedings").

In short, what happened here was not a classic Appointments Clause offense—nor perhaps any "appointments" violation at all. But it was still wrong. This Court agrees with

the magistrate judge that the medical consultants blundered by adopting any part of a decision from an unauthorized judge. And the ALJ botched the analysis by partially relying on those consultants' opinions without explicitly discounting their mistake.

### 3. *Structural or Nonstructural Error?*

The key issue then is whether the ALJ's misstep falls within the "very limited class" of "structural errors" that are never harmless and "trigger automatic reversal." *See United States v. Davila*, 569 U.S. 597, 611 (2013). Structural-error doctrine recognizes that "while most errors can be placed on [the scales] alongside the rest of a trial and weighed, other errors damage" the scale itself. Zachary L. Henderson, *A Comprehensive Consideration of the Structural-Error Doctrine*, 85 Mo. L. Rev. 965, 1010 (2020); *see also Washington v. Recuenco*, 548 U.S. 212, 218 (2006) ("[M]ost constitutional errors can be harmless," save for "rare cases" when "an error is structural.").

A hearing led by a disqualified judge is structurally flawed—the scale itself is broken. *See Lucia*, 585 U.S. at 241, 251–52; *cf. Gomez v. United States*, 490 U.S. 858, 876 (1989) (automatically reversing felony conviction because a magistrate judge "exceed[ed] his jurisdiction by selecting a jury" over "the defendant's objection" and "without any meaningful review by a district judge"). By contrast, a qualified judge who erroneously relies—in part—on constitutionally suspect evidence does no such structural damage to our system. That error can be reviewed for harmlessness. *See, e.g.*, *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991) (holding that admission of a "coerced confession is subject to a harmless-error analysis"). So it is here.

### 4. *Prejudicial or Harmless Error?*

The question therefore becomes whether this error was "inconsequential to the ultimate nondisability determination." *Leach v. Kijakazi*, 70 F.4th 1251, 1256 (9th Cir. 2023). In Social Security appeals, claimants must show that errors raise a "substantial likelihood of prejudice." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.").

Is there a substantial likelihood—or *any* likelihood—that the error here made a difference to the result? Not at all. Elizabeth has not even tried to argue otherwise, and with good reason. Several reasons, actually. First, any prejudice argument boils down to this: Elizabeth was somehow harmed because ALJ Messer relied (partially and indirectly) on a judge who took a more *favorable* view of her claim than he did. This borders on the nonsensical. Imagine if ALJ Messer had instead committed the much graver misdeed of mindlessly rubber-stamping the infirm decision. That would have moved the needle even closer to Elizabeth's longed-for disability finding, not farther away from it. This is not prejudice.

Second, the two consulting doctors' opinions—purged of any improper reference to the 2018 decision—support denial of benefits. They reviewed Elizabeth's updated file, concluded there was "no material change" since that ruling, and agreed with the prior residual functional capacity of modified "light" work. (*See* AR 121 ("I agree w/ previous ALJ decision light RFC.").) Had they not taken the additional—and mistaken—step of deeming that past decision "adopted" "per policy guidance," their opinions would have fully supported ALJ Messer's ultimate ruling. (*See id.*)

Finally, the decision was amply justified even without the consulting doctors' input. ALJ Messer gave weight to only one other expert: Dr. Neely. (*See* AR 22–23.) Just like the consulting physicians, Dr. Neely bolstered the ALJ's findings by determining that Elizabeth could work at the "light exertional level," with minor restrictions. (AR 19, 22–23.) But from there, Dr. Neely's opinion was worse for Elizabeth's claim, as he believed she had "no limitation" with her "hands." (*See* AR 22–23.)

At any rate, the medical opinions were not a major factor in the disability analysis. ALJ Messer didn't give great weight to any of them, rejecting three altogether—even one that said Elizabeth could handle "medium" work—and finding Dr. Neely's and the two consultants' opinions only "partially persuasive." (AR 21–24.) Instead, the ALJ's reasoning was most informed by his detailed, and unchallenged, examination of the administrative record. (*See* AR 19–24.)

Put simply, even without the consulting doctors' opinions, there was "substantial evidence" to support the ALJ's determination that Elizabeth could work. *See Attmore*, 827 F.3d at 875. So, any error was harmless.

**B.     Husband's Testimony**

Elizabeth next complains that the ALJ "failed to provide specific and germane reasons for rejecting" her husband's testimony. (ECF 21, at 13.) But no such reasons were needed under current law. "It is an open question whether ALJs are still required to consider lay witness evidence under the revised regulations, although it is clear they are no longer required to articulate it in their decisions." *Fryer v. Kijakazi*, No. 21-36004, 2022 WL 17958630, at *3 n.1 (9th Cir. Dec. 27, 2022). At most, ALJs "must merely show that they considered such evidence in deciding the claim." *Mary M. v. Kijakazi*, No. 20-CV-1457-AGS, 2022 WL 891445, at *6 (S.D. Cal. Mar. 25, 2022). This ALJ cleared that modest bar. Although he misnamed the husband once, ALJ Messer explicitly "considered" the opinions of "claimant's husband"; cited to the spouse's third-party Adult Function Report; concurred with some of his "daily living" testimony; and dismissed the balance of his statement as "inconsistent with the record." (*See* AR 24, 308–15.) This evidence was handled appropriately.

## CONCLUSION

Thus, the Commissioner's objection to the report and recommendation is sustained. The Court accepts the magistrate judge's conclusion that there was error, but rejects the recommendation for remand, as that error was harmless. The Clerk will issue a judgment for the defense and close this case. The ALJ's decision is

**AFFIRMED.**

Dated:  March 31, 2024

Hon. Andrew G. Schopler
United States District Judge